**INTRODUCTION**

Plaintiff has brought claims against Defendants under the federal mandamus statute, *28 U.S.C. § 1361,* and the Administrative Procedures Act, *5 U.S.C. § 555(b)* and *701 et. seq.,* in conjunction with *28 U.S.C. § 1331,* for unlawfully withholding and unreasonably delaying adjudication of his Form I-485, Application for Adjustment of Status to that of Permanent Resident (hereafter "Plaintiff's application" or "Plaintiff's I-485 application"). He seeks a writ of mandamus compelling the Defendants to immediately complete the security checks associated with his I-485 application and to immediately adjudicate said application.

**STATEMENT OF FACTS**

Plaintiff is a 28-year-old male native and citizen of India who was granted asylum in the United States on April 8, 2002 by an Immigration Judge in San Francisco, California. *See* Plaintiff's Complaint for Writ of Mandamus (hereafter "Complaint"), Ex. 1. On August 25, 2003, Plaintiff filed an Application to Adjust to Permanent Resident Status on Form I-485 with the USCIS's legacy U.S. Immigration Naturalization Service Nebraska Service Center (NSC). *See* Complaint, Exs. 2 & 3. Pursuant to section 209(b) of the Immigration and Nationality Act ("INA") and the federal regulations at 8 C.F.R. §§ 209.2 and 1209.2, persons who are in asylee status and have been continuously present in the U.S. for at least one year after being granted asylum are eligible to apply for permanent residency. *See INA § 209(b) [8 U.S.C. 1159(b)] ); 8 C.F.R. § 209.2 [June 3, 1998]; 8 C.F.R. § 1209.2 [Feb. 28, 2003].*

After filing his I-485 application, Plaintiff complied with all instructions and notices issued to him thereafter. When he was issued a fingerprint notification letter on June 7, 2004, he went to the USCIS Application Support Center in Oakland, CA on July 9, 2004 and had his fingerprints taken. *See* Complaint, Ex. 4. On November 3, 2005, Plaintiff received a notice

stating that his case had been transferred from the NSC to the Texas Service Center (TSC). *See* Complaint, Ex. 5. As of September 15, 2007, the NSC is currently processing asylum-based permanent resident applications with a receipt date of October 1, 2006 or earlier, while the TSC is currently processing asylum-based permanent resident applications with a receipt date of August 1, 2004 or earlier.[1] *See* attached Exs. A & B.

On November 15, 2005, Plaintiff was issued a letter from the TSC requesting him to submit additional evidence in support of his Adjustment Application, which Plaintiff submitted in a timely manner, namely a completed medical examination form (Form I-693), Supplemental Form to I-693, and an updated Biographic Information Sheet, Form G-325A. *See* Complaint, Ex. 9. Then, on January 30, 2006, he was issued a notice to appear at the Application Support Center in Oakland, CA for biometrics processing, which he did on February 25, 2006. *See* Complaint, Exs. 10 & 11. Since then, his I-485 application is still pending at the TSC.

On December 31, 2006, Plaintiff emailed the TSC to inquire into the status of his Adjustment Application. *See* Complaint, Ex. 12. TSC responded by e-mail that his file is still awaiting security clearance and that as soon as this was completed, his application would be adjudicated. *Id.* On January 31, 2007, Plaintiff's attorney mailed a letter to the TSC requesting a status check and that the Adjustment Application be promptly adjudicated. Plaintiff's attorney received no response from the TSC. *See* Complaint, Ex. 13. After his attempts to get Defendants to issue a decision on his application proved fruitless, Plaintiff filed a complaint for writ of mandamus in this Court on May 11, 2007. Since filing the complaint, he has been

---

[1] The current processing timelines for asylee-based permanent resident applications at the NSC and TSC have changed since Plaintiff filed his complaint in the Court. At the time Plaintiff filed his complaint in this Court on May 11, 2005, the NSC reported that it was processing asylee-based permanent resident applications with receipt dates of March 1, 2004, while the TSC was processing such applications with receipt dates of August 1, 2001. *See* Plaintiff's Complaint, Exs. 7 & 8.

fingerprinted a third time on August 9, 2007.  *See* attached Ex. C.

The delay in adjudicating his Adjustment Application has made it difficult for Plaintiff to move forward with his life.  Plaintiff desires to work for the U.S. Postal Service (USPS) as a Motor Vehicle Truck/Trailer Operator.  *See* Complaint, Ex. 14.  In order to meet the requirements for this job, he obtained his Commercial Driver's License in 2000 and has met all other requirements for the job, except for the residency requirement.  *Id.* & Complaint, Ex. 15. The USPS requires that all of its employees must be U.S. citizens or lawful permanent residents, and specifically excludes from employment those in asylee status.  *Id.*

When he filed his Adjustment Application, Plaintiff hoped that he would soon become a permanent resident so that he could start a career in the USPS.  *See* Complaint, Ex. 14.  More than four years have passed since he filed his Adjustment Application and still it has not yet been adjudicated.  During the last four years, he has seen numerous job openings at the USPS, but has not been able to apply due to the fact that his Adjustment Application still has not been adjudicated.  *Id.*  The long delay in adjudicating his Adjustment Application has meant that he has had to put on hold his career and future. *Id.*  Furthermore, without a solid career and firm future, it has been difficult for him to start a family and settle down.  *Id.*

## ARGUMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed R. Civ. 56(c).*  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248-49 (1986).  "The mere existence of a

scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 248-49.  At the summary judgment state, evidence must be viewed in light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.  Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment by affirmatively demonstrating that there is no genuine dispute as to every essential element of its claim.  *See River City Mkts, Inc. v. Fleming Foods W., Inc.,* 960 F.2d 1458, 1462 (9th Cir. 1992).

I.    **Defendants have a mandatory, non-discretionary duty to adjudicate Plaintiff's I-485 application within a reasonable time.**

Pursuant to the federal mandamus statute at 28 U.S.C. § 1361 as well as the APA at 5 U.S.C. § 701 *et seq.* in conjunction with 28 U.S.C. § 1331, Plaintiff  invokes the Court's jurisdiction to issue a writ of mandamus compelling the defendants to adjudicate his I-485 Application for Permanent Residence.   Under the federal mandamus statute at 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *28 U.S.C. § 1361.*   A writ of mandamus is appropriate where (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty to act is non-discretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available.  *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir. 1994);  *Patel v. Reno,* 134 F.3d 929, 931 (9th Cir. 1997).

Furthermore, the APA authorizes a suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 61 (2004); *5 U.S.C. § 702.*  Agency action is defined by the APA to include "the whole or part of an agency

rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act.*"
*Norton,* 542 U.S. at 62 (emphasis in original).    The APA requires that agencies conclude
matters presented to them within a reasonable time period: "With due regard for the
convenience and necessity of the parties or their representatives and within a reasonable time,
each agency shall proceed to conclude the matters presented to it." *5 U.S.C. § 555(b).*    Should
an agency not conclude a matter presented to it within a reasonable time, a court may hear a
petition for a writ of mandamus to compel an agency to perform an action unlawfully withheld
or unreasonably delayed.    *5 U.S.C. §§ 555(b), 706(1).*    In short, to invoke subject matter
jurisdiction under the APA, a plaintiff must show that a defendant (1) had a nondiscretionary
duty to act, and (2) unreasonably delayed in acting on that duty.

Numerous courts in this district and other districts have held that the INA and the code
regulations, in conjunction with the APA, establish that the USCIS has a non-discretionary duty
to adjudicate I-485 applications within a reasonable time, and that, concomitantly, the applicants
have a clear and certain right to the performance of this duty.  *See Aboushaban v. Mueller,* 2006
U.S. Dist. LEXIS 81076 (N.D. Cal.); *Singh v. Still,* 2007 U.S. Dist. LEXIS 16334 (N.D. Cal.);
*Wu v. Chertoff,* 2007 U.S. Dist. LEXIS 33816 (N.D. Cal.); *Gelfer v. Chertoff,* 2007 U.S. Dist.
LEXIS 26466 (N.D. Cal.); *Quan v. Chertoff,* 2007 U.S. Dist. LEXIS 44081 (N.D. Cal.); *Liu v.
Chertoff,* 2007 U.S. Dist. LEXIS 50173 (E.D. Cal.); *Yu v. Brown,* 1999 U.S. Dist. LEXIS 1357
(D.N.M.).    These courts base their conclusion on sections 209 and 245 of the INA and the
corresponding regulations at 8 C.F.R. §§ 209.2(f) and 245.2(a)(5).  INA § 245(a) provides that
"[t]he status of an alien who was inspected and admitted or paroled into the United States …
may be adjusted by the Attorney General in his discretion and *under such regulations as he may
prescribe*, to that of an alien lawfully admitted for permanent residence. *INA § 245(a) [8 U.S.C.*

§ 1255(a)] (emphasis added).  With respect to an asylee-based adjustment application, 8 C.F.R.

§ 209.2(f) provides that "[t]he applicant *shall* be notified of the decision, and if the application is

denied, of the reasons for denial … If the application is approved, the director *shall* record the

alien's admission for lawful permanent residence as of the date of the approval of the

application."  *8 C.F.R. § 209.2(f); see also Aboushaban* at *4 (reading this text "as creating a

non-discretionary duty to adjudicate" plaintiff's asylee-based I-485 application); *8 C.F.R. §*

*245.2(a)(5)* (requiring USCIS to notify the applicant of its decision with respect to family-based

I-485 applications).   Moreover, several courts have noted that the discretion to which USCIS is

entitled is in regards as to how to resolve an I-485 application, but not as to whether to resolve

such application. *Singh* at *9;   *Yu* at *25-26; *Quan* at *7;    *Liu* at *9 (noting that "the

government has conceded in at least two similar actions [that] while its duty to grant an adjusted

status is discretionary, its duty to *process* I-485 applications under section 1255 is non-

discretionary.")

     As noted above, these same courts have also held that USCIS has a non-discretionary

duty to adjudicate such applications within a reasonable time.  Notwithstanding the fact that the

INA does not provide a mandatory time frame for the adjudication of I-485 applications, these

courts have held that the APA does impose a "reasonable time frame" requirement on the basis

of  5 U.S.C. § 555(b), which mandates that agency action be concluded within a reasonable

time, and 5 U.S.C. § 706(1), which provides that courts shall compel agency action unlawfully

withheld or unreasonably delayed.  *See  Gelfer* at *4-5 ("Allowing the respondents a limitless

amount of time to adjudicate petitioner's [I-485] application would be contrary to the

'reasonable time' frame mandated under 5 U.S.C. § 555(b), and, ultimately, could negate the

USCIS's duty under *8 C.F.R. 245.2(a)(5).")* ; *Liu* at *11; *Quan* at *10-11; *Aboushan* at *5; *Wu*

at *3; *Yu* at **27-29 (holding that although no time frame is expressly defined in the INA with respect to the adjudication of I-485 applications, "a contrary position would permit [Defendants] to delay indefinitely," and "Congress could not have intended to authorize potentially interminable delays.")

Even aside from the APA, the federal mandamus statute at 28 U.S.C. § 1361 also provides that "petitioners whose applications for adjustment in status are properly before the INS … have a right the right, enforceable through a writ of mandamus, to have their applications processed *within a reasonable time*." *Fu v. Reno,* 2000 U.S. Dist. LEXIS 16110, at *13-14 (N.D. Tex.); *Paunescu v. INS,* 76 F. Supp. 2d 896, 901 (N.D. Ill 1999) (concluding that there was mandamus jurisdiction because "[p]laintiffs have a right to have their applications for adjustment of status adjudicated, defendants have a duty to perform this adjudication within a reasonable time, and not other remedy is available to plaintiffs").

**II.  Defendants have unreasonably delayed adjudication of Plaintiff's I-485 application.**

The remaining question, then, is whether the delay in adjudicating Plaintiff's I-485 application is unreasonable. "What constitutes unreasonable delay in the context of immigration applications depends on a great extent on the facts of the particular case." *Gelfer* at *5. Plaintiff's application has been pending for more than four years since August 2003. Delays of even shorter duration have been found to be unreasonable. *See Galvez v. Howerton,* 503 F. Supp. 35, 39-40 (C.D. Cal. 1980) (holding a six month delay by defendants in processing was unreasonable); *Paunescu,* 76 F. Supp. At 901-02 (holding a ten-month delay unreasonable); *Yu* at *30 (holding that a two-and-a-half year delay in adjudication was *prima facie* an unreasonable delay); *Razik v. Perryman,* 2003 U.S. Dist. LEXIS 13818 (N.D. Ill.) (denying respondents' motion to dismiss because plaintiff's application had been languishing for two years and the INS

had done nothing); *Aboushan* at *5-6 (finding an 8-year delay unreasonable);

Defendants justify the delay stating that they cannot adjudicate the application until the security checks have been completed. A simple assertion that USCIS is awaiting the results of the security check, without more, is not sufficient to justify a four year delay in the adjudication of Plaintiff's I-485 application. *See Liu* at *13 (holding that the USCIS' assertion that it is simply following the required security background procedures is by itself insufficient to justify a two-and-a-half year delay); *Gelfer* at *2 (holding that reasonable delay in processing an I-485 application is not shown by simply asserting that the USCIS is awaiting the results of an FBI name check when plaintiff's application has been "stagnant" for two years); *Wu* at *10 (finding that Defendants' presentation of a detailed description of the FBI name-check process in an attempt to explain a three-year delay "fails to compel the conclusion that three years is a 'reasonable time' as a matter of law"); *Singh* at *16 ("[T]he mere invocation of national security is not enough to render agency delay reasonable per se.")

In its "Fact Sheet" on "Immigration Security Checks – How and Why the Process Works," the USCIS explains that there are three parts to the security checks. *See* attached Ex. D. The first one is the Interagency Border Inspection System (IBIS) Name Check, the results of which are "usually available *immediately*." *Id.* (emphasis added). The second check is the FBI fingerprint check. According the USCIS, the FBI generally forwards responses to the USCIS *within 24 to 48 hours* and that only about 10 percent of the inquiries uncover criminal history, including immigration violations. *Id.* The third part of the security check is the FBI Name Check. *Id.* According to the USCIS Fact Sheet:

> Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending

longer than six months.  *Id.*

When, by Defendants' own admission, less than one percent of cases take longer than six months to complete security checks, a four year delay in adjudicating Plaintiff's application on the basis of completing security checks is clearly unreasonable absent a more specific explanation as to why Plaintiff's security check is particularly troublesome or time consuming. *See Liu* at *14 ("[A]bsent a more particular explanation by Defendants as the cause of delay in processing Plaintiffs' applications, the Court finds that the defendant has failed to demonstrate that a two-and-a-half year delay is reasonable").  When the record fails to provide a more specific explanation for the delay in adjudication of an application for immigration benefits or indicate any attempts by the Defendants to expedite the security checks, the Court should conclude as a matter of law that the four year delay in adjudication of Plaintiff's application is unreasonable. *See also Okunev v. Chertoff,* 2007 U.S. Dist. LEXIS 53161 (N.D. Cal.) ("Defendants argue that this delay is reasonable because the security checks are essential to the nation's security. Although this court appreciates that the name check implicates national security, this fact alone does not excuse Defendants from providing a sufficiently specific explanation for the long delay in processing this application.  Moreover, there is noting on the record to indicate any attempts made by Defendants to expedite the name check.  On the record before the court, this three and half year delay is sufficiently unreasonable to establish jurisdiction under the APA.")   Indeed, given that I-485 applicants are physically present in the U.S., taking as much as four years to complete the security checks seems antithetical to national security interests and bespeaks of unreasonable delay. *See Toor v. Still,*  Case #:07-cv-00645-BZ (N.D. Cal. 2007).   In the absence of evidence that provides a more specific explanation for why plaintiff's security check is especially time consuming or cannot be completed within a reasonable time, the Court cannot but

conclude that four years is an unreasonable amount of time to take to adjudicate Plaintiff's application

Plaintiff has been fingerprinted three times since he filed his I-485 application. Defendants admit that the fingerprints taken in February 2006 have already expired. *See* Defendants' Answer at ¶23. Hence, he had to be fingerprinted a third time on August 9, 2007, thus causing further delay as the FBI has to process Plaintiff's fingerprints yet another time in case he has committed any crime or violation since the previous fingerprinting. Prior to the most recent fingerprinting in August 2007, Defendants had two chances to complete Plaintiff's security check in four years and each time they failed to complete the check before the fingerprints expired. Defendants inability to complete the security checks before the fingerprints expire is clearly unreasonable.

Even by USCIS' own processing times adjudication of Plaintiff's I-485 application has been unreasonably delayed. His application has been pending far beyond the current processing times of asylee-based I-485 applications at either the NSC, where his application was initially filed, or the TSC, where it is currently pending after having been transferred there from the NSC. As noted above, the NSC is currently processing asylee-based I-485 applications filed as late as October 1, 2006, while the TSC is currently processing said applications filed as late as August 1, 2004. The four-year delay is also unreasonable according to the stated intent of Congress in 8 U.S.C. § 1571(b), which states, "it is the sense of Congress that the processing of an immigration benefit application should be completed no later than 180 days after the initial filing of the application. …" *8 U.S.C. § 1571(b).*

Courts are also less willing to tolerate delay in adjudication of I-485 applications given the significant interests at stake for the applicants in becoming permanent residents. The status

of permanent residence permits aliens to petition to immigrate their close relatives abroad, travel freely internationally, apply for U.S. citizenship after five years of being in permanent resident status, and opens up significant job opportunities that are only available to permanent residents and U.S. citizens.  Recognizing this, the Court in *Singh* held that "delay in this area is less tolerable given that human health and welfare are at stake."  *Singh* at *15-16;  *see also Okunev* at *5 ("There are too many important rights associated with permanent resident status to allow the speed at which these applications are processed to go entirely unchecked.")  For Plaintiff the interminable delay in the adjudication of his application has cost him significant job opportunities and made it impossible for him to plan for the future.

For purposes of mandamus relief under 8 U.S.C. § 1361, Plaintiff has also exhausted all administrative remedies and there are no other remedies available to him other than to ask the Court for a writ of mandamus to compel the FBI to promptly complete the security check and order the USCIS to adjudicate his application.  He wrote the TSC a letter in December 2006 requesting the agency to adjudicate his case at the earliest, and the TSC responded by saying that his application was still awaiting security clearance.  About a month later, Plaintiff's attorney wrote another letter to the USCIS also requesting the agency to adjudicate his case at the earliest, and this time USCIS failed to provide any response.  Plaintiff has waited four years, complied with fingerprinting requirements on three occasions, and provided all evidence requested by the USCIS in connection with his application, yet the USCIS still maintains that it cannot adjudicate his application because it is still awaiting the security clearance.

## CONCLUSION

Plaintiff is entitled to summary judgment as a matter of law.  There is no genuine issue as to any material fact.  Both parties agree that Plaintiff's I-485 application has been pending for

more than four years and that the delay is due to the fact that security checks have not yet been completed.    Plaintiff has shown that as a matter of law Defendants have a non-discretionary duty to adjudicate his I-485 application within a reasonable time period and that a four year delay is an unreasonable delay.    The mere assertion by the Defendants that the government is still awaiting the completion of the security checks is by itself insufficient to justify a four year delay.    The Defendants have failed to provide any specific explanation as to why the security checks in Plaintiff's case are so time consuming given that, by its own admission, less than one percent of security checks take more than six months to complete.    Absent such explanation, the government has failed to even provide a scintilla of evidence, never mind sufficient evidence, on which a jury could reasonably find for the Defendants that their four year delay in adjudicating Plaintiff's application is a reasonable delay.

On the basis of the foregoing, Plaintiff moves the Court for summary judgment and requests the Court to issue a writ of mandamus compelling the Defendants to immediately complete the security checks on Plaintiff's application and adjudicate his application.

Respectfully submitted this 21st day of September in 2007

_____
AJAI MATHEW, ESQ.
LAW OFFICE OF MANPREET SINGH GAHRA
P.O. BOX 12094
BERKELEY, CA 94712