# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Jasvir Singh

            Plaintiff,

v.

Department of Homeland Security, et. Al

            Defendants.

Civ. Act. Number: 07-02519

DECLARATION OF NABOONE PURIPONGS

NABOONE PURIPONGS, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as a Supervisory Center Adjudications Officer at the Texas Service Center in Dallas, Texas. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. The Director of the Texas Service Center is a named defendant in the case Singh v. Gonzales, 07-02519, presently pending in the United States District Court for the Northern District of California. Plaintiff, Jasvir Singh, seeks to have his pending Form I-485, Application for Adjustment of Status, adjudicated.

3.  Plaintiff is a twenty-nine-year-old citizen of India who entered the United States illegally (without inspection) near Bellingham, Washington, in December 1997. He applied for asylum in April 1998 and was assigned alien registration number A76 859 957. The agency declined to grant asylum and referred Plaintiff's application for asylum to the Immigration Court in March 1999. Plaintiff was granted asylum on April 8, 2002, by an Immigration Judge during removal proceedings in San Francisco, California.

4.  An alien who has been physically present in the United States for at least one year after being granted asylum may apply for adjustment of status to that of a lawful permanent resident ("green card" holder) by filing Form I-485.

5.  Plaintiff filed his Form I-485 on August 25, 2003, at the Nebraska Service Center. The application was assigned receipt number LIN-03-254-53330. Due to a realignment of work among the regional service centers, Plaintiff's Form I-485 was transferred to the Texas Service Center on November 14, 2005, for completion of the adjudication. The application remains pending.

6.  At the time Plaintiff filed his application for adjustment of status on August 25, 2003, asylum-based adjustment applications were subject to an annual cap of 10,000. This cap led to a growing backlog of applications, with more than 160,000 asylees waiting for their "green cards". These applications were adjudicated under the cap in the order in which they were filed. As a result, applications like Plaintiff's that were filed in

August 2003 faced an estimated waiting period of 11 years before their "priority date" became current. In other words, under the law at the time the application was filed, Plaintiff would not be eligible to adjust status until sometime in fiscal year 2015.

7. However, in May 2005, President Bush signed into law the REAL ID Act of 2005. A provision of this new law lifted the 10,000 numerical cap on asylum adjustment applications. USCIS has responded to this new law by increasing the number of adjudicators assigned to asylum based adjustments and sending part of the pending caseload at Nebraska to other adjudicators at the Texas Service Center.

8. General requirements for asylum-based adjustment of status applications are that the alien has been physically present in the United States for at least one year after being granted asylum, continues to be a refugee/asylee, is not firmly resettled in any foreign country, and is not inadmissible to the United States under listed statutory grounds that include health-related, criminal, and national security provisions.

9. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and

convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S. Customs and Border Protection (CBP), and other DHS agencies (IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity); and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS. The public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition for which checks are required.

10. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff was fingerprinted on July 9, 2004; February 25, 2006; and August 9, 2007. The rescheduling of fingerprints is done to ensure that the case is ready to be adjudicated once all other issues are resolved.

11. Plaintiffs' preliminary IBIS checks have been completed. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary.

12. Plaintiff's name check request was electronically submitted to the FBI on September 3, 2003. FBI completed the name check on September 24, 2003.

13. Plaintiff's application has been pending since May 2005 when the asylum adjustment cap was lifted because the REAL ID Act also significantly amended the inadmissibility provisions at 8 U.S.C. 1182(a)(3)(definitions of terrorist activities, including providing material support to a terrorist organization) as well as the statutory bars to asylum.

14. Plaintiff's asylum claim included information indicating that he is or was a member or supporter of the All India Sikh Student Federation (AISSF), an organization that may come within the definition of an undesignated terrorist organization. The effect of these statutory changes on a case like Plaintiff's is still under review by USCIS. In February 2007, the Secretary of Homeland Security exercised his authority not to apply the material support inadmissibility provisions with respect to aliens who had provided material support to 8 listed undesignated terrorist organizations, but that list did not include the AISSF.

15. Plaintiff's case is being reviewed by an officer under my supervision; the issue of interpreting the REAL ID Act changes to the definitions of inadmissibility in cases involving the AISSF is under review at USCIS. I anticipate that Plaintiff will receive a notice of action being taken on his case within the next 60 days.

16. Aliens granted asylum may apply for and be granted work authorization documents and refugee travel documents to enable them to travel abroad while their application is pending. Plaintiff currently holds a travel document valid through August 17, 2008.

17. USCIS is processing Mr. Singh's adjustment of status application in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is true and correct.

> Executed at Dallas, Texas,
> on this 26th day of September, 2007.

*(signature)*
Naboone Puripongs
Supervisory Center
Adjudications Officer
Texas Service Center